RAWLS, Judge.
Russell Bullard, a minor, and his father instituted this action sounding in tort against appellees-defendants Robin Con *218 struction Corporation and Clarence C. Dillinger. A jury verdict was rendered in favor of the Bullards and judgment entered thereon. Subsequently, upon timely motion, the trial judge set aside that judgment and entered judgment for defendants. That final judgment contained a finding that Russell Bullard was, at most, a licensee, and that there was no evidence of actionable negligence against the defendant Robin Construction Corporation. The Bullards now appeal.
We will review the facts in a light most favorable to the Bullards. This law suit arose out of an accident which occurred on Robin’s housing construction project. Ronald Bullard, 19, while on his way to take his 14 year old brother Russell to school, stopped by the housing project site to inquire about a job. The two boys located a friend, William Wilkes, who along with his uncle, Curtis Wilkes, were employed as laborers by defendant Dillinger, a sheetrock and insulation subcontractor for defendant Robin. Curtis Wilkes suggested to his nephew that “while we got some help, why don’t we move that sheet-rock now.” The Bullard boys agreed to help and the four of them went to another house under construction for that purpose. As they arrived at the house where the sheetrock was located, Russell spoke to Mr. Chamberlain who was defendant Robin’s field superintendent and also a neighbor of the Bullards. Russell told him that he was going to help William Wilkes and his uncle move sheetrock, and he testified that Mr. Chamberlain “ * * * said that was good. They wanted to hurry up and get it moved before the hangers needed it.”
The sheetrock was stacked so that it was leaning against the side of the living room wall. Russell Bullard helped Curtis Wilkes move the sheetrock, one piece at a time, from the stack to the stairwell. Ronald Bullard helped William Wilkes carry it down the stairs to the basement. After several pieces had been moved from the stack, the remainder of the stack (12 to 15 pieces) fell on Russell while he was walking about one to two feet from the stack. His ankle was crushed necessitating several operations and resulting in permanent disability.
The instant suit was brought by plaintiffs against the general contractor, Robin Construction Corporation, and subcontractor Dillinger[1] upon the following theories: (1) Russell occupied the status of a business invitee while on the premises; (2) Defendants being in possession and control of the premises and having reasonable opportunity to correct a dangerous condition, i. e. sheetrock stacked in an upright position at an angle likely to cause it to fall, were each negligent in failing to correct such condition; (3) Defendants were negligent in directing that the sheetrock be stacked upright against the wall at such an angle that it was liable to fall; and (4) Defendants were negligent in removing a portion of said sheetrock which was acting as a prop to the remaining portion that fell upon plaintiff.
The primary question presented concerns the trial court’s determination that Russell Bullard, as a matter of law, was a licensee upon tire subject premises at the time of the accident. The secondary question concerns the sufficiency of the evidence as to any actionable negligence on the part of Robin.
We will first consider the position of Robin Construction Company. Construing the proofs adduced in the light most favorable to the plaintiff, the following is disclosed, viz.: (1) Robin owned and was in control of the premises; Mr. Chamberlain, Robin’s field superintendent, spoke to Russell Bullard and acquiesced in his entering the house where the sheetrock was stacked; and (2) Chamberlain had seen the *219 sheetrock stacked in a perpendicular position. We agree with the trial judge that such cannot constitute actionable negligence on the part of Robin, and this is so whether Russell’s status is that of a licensee or of an invitee. It is not disputed that Dillinger was an independent contractor working with the sheetrock at the time of the accident, thus having exclusive control of the instrumentality causing the injury. It was not the duty of Robin to furnish Russell Bullard a safe place to work.[2] Robin had no possession or control of the material immediately prior to or at the time of the accident. This is substantiated by appellants in their brief, wherein they state:
“After entering the house and while in the process of moving such sheetrock and after having moved some of it which had been stacked in an almost perpendicular position against the wall with some of the outer sheets supporting some of the sheets closer to the wall, the remainder of such sheets fell upon plaintiff minor and severely crushed his ankle, permanently, irreparably and unquestionably maiming him for life.” (Emphasis supplied)
So, only after the stack of sheetrock had been materially altered did the remainder collapse causing Bullard’s injury. The evidence, including the uncontradicted testimony of William Wilkes that on the previous day he had stood on the sheetrock while nailing insulation to the ceiling, precludes any question of actionable negligence by Robin for the jury’s consideration.
 The question of actionable negligence on Dillinger’s part poses a different problem. The proofs as outlined above, when construed in favor of plaintiffs, are sufficient to support the jury verdict if plaintiff Russell Bullard occupied the status of a business invitee at the time he suffered his injury. However, we agree with the trial judge that such proofs are not adequate to support the jury’s verdict if Russell Bullard occupied the status of a licensee and we further agree with his conclusion that Russell was a licensee.[3] Without the invitation of anyone, express or implied, Russell Bullard accompanied his brother upon the premises where Dillinger was performing his contract. Russell’s brother was seeking a job so both of the Bullards were upon the premises for their own convenience.[4] The Bullards then agreed to help two of Dillinger’s laborers move some sheetrock. These laborers had no authority to employ anyone or to seek assistance, and their invitation did not change Bullard’s status from that of licensee to that of an invitee. An employer is not liable for the unauthorized act of an employee who procures the labor of another unless said employee has been clothed with authority, either express or implied to employ help.[5] The evidence herein fails to show that Russell Bullard was performing any services for Dillinger’s benefit with Dillinger’s express or implied authorization. There is no basis in law to hold Dillinger liable for Russell Bullard’s injuries.[6]
Affirmed.
STURGIS, C. J., and WIGGINTON, J., concur.

. SmuUian Building Supply Company, the supplier that delivered and stacked the sheetrock in said house and an original defendant, was granted a directed verdict at tlie conclusion of plaintiffs’ case, and no issue was raised as to the propriety of that action.

. Quinnelly v. Southern Maid Syrup, 164 So.2d 240 (Fla.App.2d 1964).

. See Eisen v. Sportogs, Inc., 87 So.2d 44 (Fla.1956); City of Boca Raton v. Mattef, 91 So.2d 644 (Fla.1956); Cochran v. Abercrombie, 118 So.2d 636, 79 A.L.R.2d 986 (Fla.App.2d 1960).

. 23 Fla.Jur., Negligence, § 57.

. 35 Am.Jur., Master and Servant, § 540.

. Douglas v. Railway Express Agency, Inc., 75 So.2d 802 (Fla.1954).